UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TONJA WRIGHT, INDIVIDUALLY AND | * | |
| ON BEHALF OF HER MINOR SON, | * | CIVIL ACTION |
| NOAH JACKSON | * | |
| | * | NO. 16-16214 |
| VERSUS | * | |
| | * | SECTION L (1) |
| NATIONAL INTERSTATE | * | |
| INSURANCE CO., ET AL. | * | |

### ORDER AND REASONS

Before the Court are several motions *in limine* filed by Plaintiff Tonja Wright and Defendants Terry Tearle Poole, Mabe Trucking Company, Inc. and National Interstate Insurance Company. Having considered the parties' arguments, submissions, and applicable law, the Court now issues this Order and Reasons.

### I. BACKGROUND

This case arises out of an automobile accident. On September 9, 2015, Plaintiff Tonja Wright was operating her 2011 Ford Escape in Tangipahoa Parish, Louisiana, when she was struck by a 2015 Kenilworth trailer owned by Mabe Trucking Company and operated by Terry Poole. Rec. Doc. 1-1 at 2. Wright also brings this case on behalf of her minor son Noah Jackson, who was travelling with her in the car at the time of the alleged accident.

Plaintiff filed suit in state court on August 23, 2016, seeking damages for past and future mental and physical pain and suffering, property damage, loss of use of vehicle, depreciation, rental expenses, medical expenses, loss of past earnings, loss of future earning capacity, disability, scarring and disfigurement, loss of consortium, penalties, and attorneys' fees. Rec. Doc. 1-1 at 1, 4. Plaintiff claims that the 2015 accident, the instant dispute, caused her to need a cervical fusion at the C4-C6 levels, which was performed on August 2, 2016. Rec. Doc. 23. Meanwhile,

Defendants assert that Plaintiff's alleged injuries and damages resulted from a separate, intervening or superseding event. *See* Rec. Doc. 23.

## II. DISCUSSION

### A. Plaintiff's Motions

1. <u>Motion *in Limine* to Exclude Defendants' Expert Ben Smith</u> (Rec. Doc. 46)

Plaintiff moves to exclude testimony and reports by Ben Smith, an accident reconstruction expert, from Messerschmidt Safety Consultants because Defendants have not produced the expert's report. The Court's Scheduling Order required parties to deliver such reports by August 3, 2017. In response, Defendants argue that the delay was engineered by Plaintiff, who repeatedly failed to provide photos and a video from the accident. Rec. Doc. 53 at 2-4. Defendants had served requests for production on January 3, 2017, and asked for photographs and videos in connection with the accident. However, Plaintiff did not deliver the photographs until August 3, 2017 and the video until August 18, 2017. *See* Rec. Doc. 53 at 3.

In deciding whether to exclude evidence, the Court considers four factors: (1) the party's explanation for its failure to timely identify its witnesses and exhibits; (2) the importance of the proposed evidence; (3) potential prejudice in allowing the admission of the exhibits or testimony; and (4) the availability of a continuance to cure such prejudice. *Serigne v. Preveau*, No. 11-3160, 2013 WL 3863874, at *1 (E.D. La. July 23, 2013) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 790-92 (5th Cir. 1990)). Here, photographs and videos of the event are pertinent materials to an accident reconstruction expert. Because Plaintiff did not produce this information until after the deadline, this Court accepts Defendants' justification in late production of Smith's report, and finds the delay excusable and harmless. Moreover, with the trial date now set in March 2018, parties have sufficient time to review Smith's report. Accordingly, Plaintiff's motion is **DENIED**.

2

2. <u>Motion for Sanctions Due to Spoliation of Evidence, Adverse Inference and to Strike Defenses by Defendants</u> (Rec. Doc. 45)

Plaintiff requests an adverse inference regarding liability due to Defendant Mabe's allege spoliation of video and picture evidence of the accident. Rec. Doc. 45-1 at 3-4. Further, Plaintiff requests sanctions and cost for Plaintiff's litigation effort to prove liability. *Id.* During discovery, Plaintiff requested information regarding whether there were any photographs, videos, sketches, maps, or diagrams pertaining to any fact or issue set forth in the Complaint. *See* Rec. Doc. 45-1 at 2. In response to Plaintiff's discovery requests, Defendants each responded that they were not in possession of responsive information regarding these requests other than the photos of Plaintiff's car and the police report. *Id.* When Mr. Poole was deposed, however, he indicated that, at the time of the accident, his truck had a video camera pointing at the driver and the road. *Id.* The parties dispute whether the video captured the incident. According to Defendant Mabe, while the cameras are always "on," they do not record unless a triggering event occurs. Rec. Doc. 55 at 3. Further, Defendant explains there are three events which trigger the cameras to capture video: (1) a hard brake, (2) the vehicle leaning right or left and (3) an impact. *Id.* Defendant contends that none of these triggering moments existed because Poole alleges he was stopped at a stop sign with his brake activated. *See* Rec. Doc. 55 at 5.

Under Rule 37, a court may issue an order imposing an array of sanctions if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. Proc. 37(b)(2)(A). Here, where the alleged conduct occurred prior to the commencement of litigation, federal law provides that a trial court may exercise its discretion to impose sanctions on a party responsible for the spoliation (i.e. intentional destruction) of relevant evidence. *Menges v. Cliffs Drilling Company*, No. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000); *see also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D. Tex. 2010) ("Spoliation is the destruction or the

significant and meaningful alteration of evidence."). "Adverse inference sanctions 'are properly viewed as among the most severe sanctions a court can administer.'" *Spencer v. Hercules Offshore, Inc.*, No. 13-4706, 2014 WL 1681736, at *4 (E.D. La. Apr. 28, 2014).

For the spoliation of evidence doctrine to apply, the movant must prove two elements: (1) that the party who had control over the evidence had a duty to preserve it at the time the evidence was destroyed; and (2) that the destruction of evidence was intentional. *Garnett v. Pugh*, 2015 WL 1245672, at *4 (E.D. La. March 18, 2015); *Menges*, 2000 WL 765082, at *2. "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Premier Dealer Servs., Inc. v. Duhon*, No. 12-1498, 2013 WL 6150602, at *3 (E.D. La. Nov. 22, 2013); *see also Dixon v. Greyhound Lines, Inc.*, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014) ("The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent."); *Garnett*, 2015 WL 1245672, at *4 ("In order for a party to have a duty to preserve evidence, the party must have notice that the evidence is relevant to the litigation."). Further, it is well settled within the Fifth Circuit that an adverse inference drawn from the destruction of records is predicated on bad faith. *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000); *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir. 1975). "Culpability is not established by any bright line test, but rather, analyzed on a case-by-case basis." *Premier Dealer Servs., Inc.*, 2013 WL 6150602, at *5.

While the Court agrees video footage of the incident is relevant, Plaintiff does not satisfy her high burden of demonstrating bad faith on the part of the Defendant: her allegations of bad faith are speculative. As Defendant explains, ECM data for the video is recorded over as soon as the truck in question is started or begins traveling again. Rec. Doc. 55 at 5. Further, Plaintiff presents no concrete evidence the ECM "capture" occurred at the moment of the alleged accident.

According to Defendant, due to limitations in storage, the ECM data cannot possibly record constantly. *Id.* Even though Mabe has a company policy to preserve footage after an accident, Defendant contests that it did not know litigation was imminent. Poole has consistently denied wrongdoing to his then-employer Mabe, the police report indicated that Plaintiff did not seek medical treatment, and Plaintiff's own photographs of her vehicle—at first glance—show no discernable damages. *See* Rec. Doc. 55 at 5. The existence of a camera and possibility of video footage, without more, do not warrant the Court to find bad faith, and subsequently impose the most severe sanction here: an adverse inference. Thus, Plaintiff's motion is **DENIED**. Nonetheless, under FRE 607, Plaintiff may question Defendants about the camera in the truck— and the whereabouts of the video footage, if any—as that goes to Defendants' credibility.

    **B.**    **Defendants' Motions**

        1.    <u>Motion to Strike Testimony and Report of Ralph Litolff</u> (Rec. Doc. 38)

Defendants move to exclude the testimony and report from Plaintiff's forensic accounting expert, Mr. Ralph Litolff, because it was untimely. The Court issued its Scheduling Order on April 11, 2017. *See* Rec. Doc. 12. The Scheduling Order states written reports of experts, as defined by Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiff, which full set forth all matters about which they will testify and the basis therefor, "shall" be obtained and delivered to counsel for Defendants no later than July 3, 2017. Rec. Doc. 12. As of July 3, 2017, Plaintiff had identified only Lacy Sapp, her vocational rehabilitation expert. *See* Rec. Doc. 38-2 at 4. Then, on August 3, 2017, Plaintiff identified Mr. Litolff. *See* Rec. Doc. 38-2 at 4. Plaintiff forwarded his report to Defendants on August 4. *See* Rec. Doc. 38-2 at 4. Plaintiff forwarded the personal tax returns, which allegedly formed the basis of his report, on August 8. *See* Rec. Doc. 38-2 at 4.

Plaintiff contends that additional time had been agreed to be given while settlement

negotiations were ongoing during the relevant dates. Rec. Doc. 59-2 at 2-3. Defendants agreed that they had provided "an extra few days"—not weeks, however. Rec. Doc. 62-2 at 1-2.

In evaluating whether to exclude an expert report due to tardiness, courts consider whether a party's failure to disclose is harmless. Specifically, courts look to four factors: (1) the explanation for the party's failure to disclose; (2) the potential prejudice to the opposing party if the evidence is allowed; (3) the availability of a continuance to cure such prejudice; and (4) the importance of the evidence." *Red Dot Bldgs. v. Jacobs Tech., Inc.*, CIV.A. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012 (citing Fed. R. Civ. P. 37(c)(1)). Here, production of the expert's report, delayed by a month, is allegedly due to ongoing settlement discussions. In a June 27, 2017 email, Plaintiff's counsel wrote to Defendants' counsel that the parties had discussed he would "hold off a couple of days on spending money on my economist and possibly some other experts until I hear back from you and your client regarding possible settlement." Rec. Doc. 59-2. Although Defendants argue that they only agreed to "an extra few days," the Court finds this tardiness harmless and that Mr. Litolff's report is relevant to determining damages in this case. Accordingly, Defendants' motion to strike is **DENIED**.

        2.        Motion *in Limine* to Exclude Wage Testimony of Lacy Sapp and Ralph Litolff (Rec. Doc. 43)

As part of her claim for damages, Plaintiff alleges she has suffered past wage loss and will suffer a loss of earning capacity. Plaintiff testified she is employed as the executive director of House of Tiny Steps, Inc., a 501(c)(3) corporation and has held that position for the past five years. Plaintiff's business is sponsored by the United States Department of Agriculture. Doc. 57-2 at 2. The business contracts with the Louisiana Department of Education to provide meals to children. Doc. 43-2 at 2. Plaintiff retained Lacy Sapp to provide a vocational rehabilitation analysis and Ralph Litoff as an expert economist. According to Defendants' understanding (which Plaintiff

6

contends), Ms. Sapp suggested Plaintiff's potential future annual income is $473,891.41 and Mr. Litolff calculated it to be $110,970.00. However, neither experts, according to Defendants, reviewed Plaintiff's personal income tax returns or House of Tiny Steps's revenues. Plaintiff's past tax returns indicate a range from $-179.00 (reported business income) in 2012 to $20,532.00 (adjusted gross income) in 2016. The revenues of House of Tiny Steps ranged from $82,199.00 in 2012 to $175,132.00 in 2015. Rec. Doc. 43-2 at 3-4.

Plaintiff suggests that Defendants have misread the experts' reports. Plaintiff clarifies: the $473,891.41 which Defendants take issue with was merely gross revenue projected for House of Tiny Steps by Sapp and is not going to be offered by Sapp (or Litolff) as net income that would have been earned by Plaintiff. Rec. Doc. 57-2 at 5. Moreover, Plaintiff points out that the $110,970.00 annual income utilized in the Litolff report, representing the Plaintiff's earnings capacity, is based on the 90th percentile for nonprofit executive directors in the State of Louisiana according to the Bureau of Labor Statistics. Rec. Doc. 57-2 at 5. According to Plaintiff, prior to the accident, she was in the process of adding more sites to participate in the Child and Adult Care Food Program at the time of the accident. Rec. Doc. 57-2 at 2. Plaintiff was also allegedly in the process of expanding her programs in the Summer Food Service Program. *Id.* Due to her injuries related to the accident, however, Plaintiff claims she has lost the opportunity to further expand her business and is concerned that she will be unable to maintain her current accounts. Nonetheless, Plaintiff acknowledges that contrary to Defendants' argument on this issue, it is not necessary to project the income of House of Tiny Steps into the future to determine Plaintiff Wright's future wage losses: the jury will be asked to decide the income loss of Plaintiff, not House of Tiny Steps. Rec. Doc. 57-2 at 6.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v.*

7

*Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).  In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id.* at 589.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id.* Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id.* at 592-93.  In making this assessment, the trial court need not take the expert's word for it. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).  Instead, when expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998).

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis.

Defendants have challenged the testimonies of Plaintiff's experts Sapp and Litolff.  The Court has determined that both experts are sufficiently qualified through their education and experience to offer expert testimonies.  The Court finds that their opinions were formed using appropriate methodology.  Defendants' main objections are with issues of credibility and weight to be given to Plaintiff's experts, which are questions best left to the trier of fact.  Defendants can address their concerns at cross examination.  Accordingly, Defendants' motion is **DENIED**.

### III. CONCLUSION

Based on the foregoing, accordingly,

**IT IS ORDERED** that all motions (Rec. Docs. 38, 43, 45 & 46) are hereby **DENIED**.

New Orleans, Louisiana, this 12th day of September, 2017.

**ELDON E. FALLON**
United States District Judge