UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TONJA WRIGHT, INDIVIDUALLY AND | * | |
|---|---|---|
| ON BEHALF OF HER MINOR SON, | * | CIVIL ACTION |
| NOAH JACKSON | * | |
| | * | NO. 16-16214 |
| VERSUS | * | |
| | * | SECTION L (1) |
| NATIONAL INTERSTATE | * | |
| INSURANCE CO., ET AL. | * | |

**ORDER AND REASONS**

Following a five-day jury trial, Plaintiff has timely filed the instant motion for a new trial pursuant to Federal Rule of Civil Procedure 59. Rec. Doc. 169. Defendants oppose the motion. Rec. Doc. 174. The Court held oral argument on this matter on April 25, 2018.

Separately, Defendant Allstate Property and Casualty Insurance Co. has filed a motion to alter or amend the judgment. Rec. Doc. 171. No opposition has been filed regarding this motion.

Having considered the parties' arguments, submissions, and applicable law, the Court now issues this Order and Reasons.

**I.  BACKGROUND**

   **A.  Factual History**

This case arose out of an alleged collision between two motor vehicles. On September 9, 2015, Plaintiff Tonja Wright was operating her 2011 Ford Escape in Tangipahoa Parish, Louisiana, when she approached a truck that had stopped near a stop sign. Plaintiff claimed that instead of moving forward, the truck backed into her vehicle, pushing her vehicle several feet back. Ms. Wright's minor son, Noah Jackson, was also in her vehicle at that time. Plaintiff asserted that the collision occurred because of the negligence of Defendant Terry Poole, the truck driver. She brought this lawsuit, on behalf of herself and her son, to recover the monetary damages resulting from this incident.

1

In response, Defendants claimed that the accident did not happen. Defendants argued that if the alleged accident did happen, it was caused by the actions of Ms. Wright. Furthermore, Defendants averred that even if there was an accident, Ms. Wright's injuries did not result from the alleged accident on September 9, 2015. Defendants asserted that a separate intervening and superseding event occurred that caused Ms. Wright's injuries, and that event is unrelated to Defendants in this case. Therefore, Defendants claimed they are not liable for Plaintiff's damages. The parties' conflicting positions created a question of fact for a jury to determine.

### B. Trial and Jury Verdict

Trial for this case commenced on March 5, 2018. As part of Plaintiff's case-in-chief, she called Dr. Eric Lonseth, an expert in the field of pain management; Dr. Thad Broussard, an expert in the field of orthopedic surgery; herself; Lacy Sapp, an expert in the field of rehabilitation, vocational counseling and life care planning; Ralph Litolff, an expert economist; and Dr. Samer Shamieh, an expert in orthopedic spine surgery. After Plaintiff rested, Defendants presented their case, calling Layton Schmidt, an eyewitness to the accident; John Dupre, a grants and program director from the State of Louisiana; Channing Perry, an investigator who took surveillance videos of Plaintiff; Defendant Terry Poole; and Dwight Loftis, a representative of Mabe Trucking Co.

Both sides gave closing arguments in the morning of March 8, 2018, and the jury began deliberation early afternoon. At 4:53 p.m., the Court was informed that a verdict had not been made. Thus, without objection from either party, the Court read its *Allen* charge,[1] borrowed and adopted from the Fifth Circuit Pattern Jury Instruction (Civil Cases) Section 2.18. The Court then

---

[1] "'*Allen*' refers to the case *Allen v. United States*, 164 U.S. 492 (1896). The term is used generally in reference to supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Bottom*, 638 F.2d 781, 786 n.4 (5th Cir. 1981).

discharged the jury and ordered jurors to return the next day at 9:30 a.m. to continue deliberation.

On March 9, 2018, at 11:50 a.m., the jury reached a verdict, which was read into the record at 12:23 p.m. The jury initially rendered the following findings:

1. Defendant Terry Poole collided his truck with Plaintiff Tonja Wright's vehicle.

2. Plaintiff sustained injuries as a result of that vehicular accident.

3. Both Defendant Terry Poole and Plaintiff Tonja Wright were negligent and their negligence were legal causes to Plaintiffs' injuries.

4. Both Defendant Terry Poole and Plaintiff Tonja Wright were equally at fault and liable.

5. Plaintiff Tonja Wright is entitled to receive $235,000.00, less 50-percent, for past and future medical expenses. She is not awarded any compensation for past and future pain and suffering, past lost wages, future loss of earning capacity, and loss of consortium.

6. Plaintiff Noah Jackson, son of Tonja Wright, is not entitled to any damages.

*See* Rec. Doc. 162.

After the jury presented this verdict, the Court highlighted an inconsistency with the award of damages based on *Yarbrough v. Sturm, Ruger & Co.*, 964 F.2d 376 (5th Cir. 1992). The jury here awarded the sum of $235,000.00 for past and future medical expenses, but nothing for past and future pain and suffering. In *Yarbrough*, the Fifth Circuit held that it was "inconceivable" that a jury could find for past and future medical expenses and past pain and suffering, but not for future pain and suffering. *See id.* at 379. Likewise, in this case, the jury had not found compensation for past and future pain and suffering even though it awarded past and future medical expenses. Therefore, the Court rejected the jury's initial verdict and instructed them to continue deliberation in order to redress this issue.

At 12:36 p.m., the jury returned from a second round of deliberation. *See* Rec. Doc. 161. The jury rendered the same findings regarding liability as their initial verdict—the parties were

equally negligent—and awarded Plaintiff past and present medical expenses of $235,000.00, *plus* $17,000.00 for past and future pain and suffering, for a grand total of $252,000.00, less 50-percent for comparative negligence.

At Plaintiff's request, the jury was polled, and each answered in the affirmative that this was indeed the respective juror's findings. The Court accepted the jury's verdict in whole. On March 13, 2018, the Court entered judgment in favor of Plaintiff for $126,000.00, after reducing the jury's award by 50-percent for comparative negligence.[2]

## II. MOTION FOR NEW TRIAL

On April 9, 2018, Plaintiff timely filed the instant motion for new trial under Federal Rule of Civil Procedure 59. Plaintiff requests a new trial based on two arguments. First, Plaintiff asserts that the award for damages was inadequate in light of her injuries and the jury's determination represents an impermissible compromise verdict. Second, Plaintiff introduces what she claims to be "newly discovered evidence," an affidavit from Captain Melvin McGary, who was an officer at the September 9, 2015 accident scene but was not called to testify at trial. Plaintiff contends that Captain McGary's testimony, hitherto unknown, would refute Defendant Poole's statements at trial.

Defendants oppose Plaintiff's motion. Defendants argue that the evidence presented to the jury sufficiently justifies the damages awarded and is not a compromise verdict. Furthermore, Defendants point out that the testimony of Captain McGary is not "newly discovered evidence" because Plaintiff had access to this evidence for over two years. Defendants aver that Plaintiff did not make every reasonable and diligent effort to procure the evidence before trial. Accordingly,

---

[2] Due to clerical error, the Court entered an amended judgment on March 19, 2018. *See* Rec. Doc. 167.

Defendants claim that Plaintiff fails to meet the burden for a new trial.

The Court will address the parties' arguments in turn.

### A. Legal Standard

Plaintiff seeks a new trial pursuant to Federal Rule of Civil Procedure 59, which provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).

Under Rule 59, a new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted); *see also McFadden v. Wal–Mart Stores*, No. 04-2547, 2006 WL 3087164, at *2 (E.D. La. Oct. 27, 2006). "A district court, however, should attempt to avoid substituting its judgment for the jury's considered verdict, so as to not violate the parties' Seventh Amendment rights." *Id.* (citing *Sorina v. Avis Rent–A–Car Sys., Inc.*, 1992 WL 40840, at *1 (E.D. La. Feb. 20, 1992)). "If the jury's verdict is 'clearly within the universe of possible awards which are supported by the evidence,' then a district court may not properly grant a new trial based merely on the inadequacy of the damage award." *Id.* (citing *Brun–Jacobo v. Pan Am. World Airways, Inc.*, 847 F.2d 242, 246 (5th Cir. 1988)). "The Fifth Circuit has stated that it will not interfere with the factfinder's award of damages unless it is 'so inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.'" *Id.* (quoting *Munn v. Algee*, 924 F.2d 569, 578 (5th Cir. 1991)).

Because the matter is before the Court on diversity jurisdiction, the new trial standards of Louisiana law are applicable. *See Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012); *Foradori v.*

5

*Harris*, 523 F.3d 477, 498 (5th Cir. 2008) ("The Supreme Court in *Gasperini* . . . held that, in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy. . . .").

Under Louisiana law, "[a] new trial shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the law and evidence." LA. CODE CIV. P. 1972(1). "The trial court's discretion in ruling on a motion for new trial is great." *Davis v. Wal–Mart Stores, Inc.*, 774 So. 2d 84, 93 (La. 2000). "Whether to grant a new trial requires a discretionary balancing of many factors." *Id.* (citing *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. App. 2 Cir. 1991)). The Louisiana Supreme Court has spoken on this discretion as follows:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. . . . Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.

*Id.* (citing *Gibson*, 594 So. 2d 1332).

In making this determination, the trial court must balance the great deference given to the jury as the factfinder and the discretion bestowed upon it in reviewing the motion, but the scales are "clearly tilted in favor of the survival of the jury's verdict." *Id.* at 93–94. The decision is to be made on a case-by-case basis. *Id.* at 94.

Furthermore, the Fifth Circuit has repeatedly held that "the decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be

6

disturbed unless there is an abuse of that discretion or a misapprehension of the law." *Dixon v. International Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985); *see also Prytania Park Hotel, Ltd. v. General Star Indemnity Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 252 (5th Cir. 1990); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982); *Evers v. Equifax, Inc.*, 650 F.2d 793, 796 (5th Cir. 1981). Modifying or setting aside a judgment under Rule 59 is an extraordinary remedy; motions for new trial or to alter or amend a judgment should not be avenues for relitigating old matters, raising new arguments, or submitting evidence that could have been presented before. *See Theriot v. Parish of Jefferson*, 66 F. Supp. 1435, 1452 (E.D. La. 1997); *Campbell v. St. Tammany Parish School Board*, No. 98-2605, 1999 WL 777720, at *1 (E.D. La. Sept. 29, 1999).

**B.    Discussion**

Plaintiff's motion presents a straightforward inquiry whether a new trial is justified. The first question is whether the award here is inadequate or represents a compromised verdict. The second question is whether Plaintiff's purported "newly discovered evidence" warrants a new trial.

*1.    Award of Damages*

Regarding damages, Plaintiff relies, in part, on *Starks v. Advantage Staffing, LLC* to support her argument that the jury's award is inconceivable. *See* 217 F. Supp. 3d 917 (E.D. La. 2016). In *Starks*, the plaintiff filed a general maritime lawsuit against his employer for personal injuries sustained in an accident. *Id.* at 919. As a result of the incident, the plaintiff underwent multiple surgeries on his arm. *Id.* The jury returned a verdict stating the defendants and plaintiff were equally liable. *Id.* The parties stipulated to $109,213.96 for past medical expenses. *Id.* The jury then awarded the plaintiff $16,000.00 for unpaid past medical expenses; $50,000.00 for past pain and suffering; and $150,000.00 for future medical expenses. *Id.* The jury entered zero as the

7

award for future physical pain and suffering and mental anguish. On a motion for new trial, the *Starks* court, citing *Yarbrough*, 964 F.2d 376, found it "inconceivable" that a jury could find for past and future medical expenses and past pain and suffering, but not for future pain and suffering. *Starks*, 217 F. Supp. 3d at 919–20. Thus, the court granted plaintiff's motion for a new trial.

The basis for a new trial in *Starks*—an inconceivable and inconsistent verdict—is precisely what this Court prevented during the instant trial. When this jury returned its initial verdict with zero as the award for past and future pain and suffering, albeit awarding past and future medical expenses, this Court, citing *Yarbrough*, noted the inconsistency to the parties as well as the jury. Thus, the Court declined the jury's initial presentation and instructed the jury to continue deliberation in order to cure the defect. A short time later, the jury rendered its verdict again: each party was equally liable; damages award of $235,000.00 for past and future medical expenses and $17,000.00 for past and future pain and suffering; no award for Ms. Wright's alleged lost wages, future earnings, and loss of consortium; and no award of past and future pain and suffering and loss of consortium to Noah Jackson. The Court then accepted the jury's verdict and entered judgment for $126,000.00, after reducing Plaintiff's 50-percent comparative negligence. Plaintiff now argues that this still represents an inconceivable and impermissible compromised verdict, relying on *Starks and Yarbrough*.

Both cases, however, are clearly distinguishable because the jury here did, in fact, award damages—$17,000.00—for past and future pain and suffering, whereas the juries in *Starks*, 217 F. Supp. 3d at 919, and *Yarbrough*, 964 F.2d at 379, awarded no compensation for future pain and suffering despite providing for future medical expenses. The question thus becomes whether Plaintiff's award is reasonable and "within the universe of possible awards which are supported by the evidence." *See Brun–Jacobo*, 847 F.2d at 246.

8

Although Plaintiff argues that $17,000.00 for past and future sufferings and no award for loss of consortium, past wages, and future economic earnings are inadequate and inconceivable given Ms. Wright's medical procedures, and lists other cases where juries have awarded more for comparable injuries, the Court finds that this jury's findings, for liability and damages, are well supported by evidence presented at trial.

For instance, the evidence indicates that Plaintiff was involved in a later, separate accident on December 13, 2016, which made her neck pain substantially worse. Moreover, Defendants' surveillance videos captured Plaintiff moving with ease on multiple occasions, carrying groceries, and lifting her son Noah. Additionally, Dr. Broussard testified via video deposition that Plaintiff had, *inter alia*, a "good result" from surgery. Finally, Plaintiff stated in some of her past tax returns that she earned zero or negative net income. Therefore, from the evidence presented at trial, the jury could—and did—reasonably find that Ms. Wright is entitled to a relatively low, yet adequate, amount for past and future pain and suffering and past and future medical expenses, as well as no award for loss of consortium, past wages, and future economic earnings, especially in light of her duty to mitigate damages.

Nevertheless, Plaintiff states that other juries in other cases have awarded more for damages. Perhaps so. But what other plaintiffs have received is irrelevant here because each jury and each set of fact pattern is unique and different. This jury, having heard testimony and examined exhibits for four days, is entitled to "great deference" in weighing the evidence. *See Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000). Although Plaintiff now attempts to substitute her own belief for the jury's determination, ultimately, she cannot usurp the jury's role as the factfinder. Thus, the Court refuses to upset or undermine the jury's reasonable findings simply because another jury in a separate case awarded more.

9

Finally, when polled at Plaintiff's request, each juror affirmed, without hesitation, that the rendered verdict was indeed his or her respective decision. Thus, Plaintiff's speculation that the jury reached a compromised verdict is just that—speculation. Accordingly, considering the record, the Court will not disrupt the jury's findings because the award rendered in this case is reasonable in light of the evidence and not "so inadequate as to shock the judicial conscience. . . ." *See Munn*, 924 F.2d at 578.

2.  *Newly Discovered Evidence*

Plaintiff represents that twenty-eight days after trial, on April 9, 2018, she learned the identity of a new witness: Captain McGary, who responded to the September 9, 2015 accident. Relevant to Plaintiff's case, Captain McGary affirms in an affidavit that he "spoke with Mr. Poole at the scene after the accident occurred. Mr. Poole told [him] that he did back his tractor-trailer into Ms. Wright's vehicle causing the accident. Mr. Poole told [him] that Ms. Wright was in his blind spot, and that he did not see her." Rec. Doc. 169-2. Moreover, "[a]fter the accident, [Captain McGary] could clearly see the tire skid marks that were under Mr. Poole's tractor-trailer[,] [which] led to and lined up with Ms. Wright's tires. The marks directly touched and conformed exactly in width and alignment to the footprint of her tires. There was no doubt that the skid marks were hers." *Id.* From this, Plaintiff concludes that Captain McGary's statements "prove" that Defendants were 100-percent at fault.

Despite Captain McGary's declaration, Defendants contend that this evidence is not "newly discovered" under governing law. Defendants argue that Plaintiff knew that two officers arrived at the accident scene for over two years, but did not exercise due diligence in identifying or locating Captain McGary to testify at trial.

Newly discovered evidence may serve as a basis for a new trial if the party "could not, with

due diligence, have obtained [this evidence] before or during the trial." LA. CODE CIV. P. 1972(2). In order to meet the burden of proof required for a new trial on the basis of newly discovered evidence, the moving party must prove (1) the evidence was discovered after the trial, (2) the new evidence is not cumulative, (3) the new evidence would tend to change the result of the case, and (4) the new evidence could not have been discovered with due diligence before the trial was completed. *Boudreaux v. Cummings*, 170 So. 3d 1002, 1006 (La. App. 3 Cir. 2015), *writ denied*, 169 So. 3d 358 (La. 2015).

When a party claims a new trial is warranted due to newly discovered evidence, the party must make a "clear showing" that he or she made "every reasonable and diligent effort" to procure the evidence before the proceedings. *Burns v. Sedgwick Claims Mgmt. Servs., Inc.*, 165 So. 3d 147, 155 (La. App. 5 Cir. 2014).

In this case, Plaintiff represents that she only learned the identity of Captain McGary on April 9, 2018. She states that Captain McGary's name was not listed in the police report, nor was she able to depose Officer Hall, the author of the police report, to learn of Captain McGary's whereabouts. Furthermore, she claims that calls to the police department were unanswered.

Notwithstanding Plaintiff's position, the Court finds that Ms. Wright has not shown that she exercised due diligence in obtaining the testimony of Captain McGary prior to trial. Plaintiff long knew that two officers came to the scene of the accident. In her deposition on April 13, 2017, almost a year and a half after the accident and about one year before trial, Ms. Wright—accompanied by her attorney—testified that she spoke with two responding officers during the September 9, 2015 accident:

> **Defense Counsel:** Was Officer Hall the only police officer who came to the scene?
>
> **Ms. Wright:** No, sir.

| | | |
|---|---|---|
| **Defense Counsel:** | | How many police officers came to the scene? |
| **Ms. Wright:** | | There were two, I recall. |

*  *  *

| | | |
|---|---|---|
| **Defense Counsel:** | | What did the police officers talk to you about? |
| **Ms. Wright:** | | They basically just came over and told me what I told you about Mr. Poole's statement and how they were able to look at the skid marks and where the vehicles were positioned to know that he had pushed me back. |

Wright Dep. 38:18–23, 82:23–83:4; Rec. Doc. 174-2 at 4–5.

As indicated, for over two years, Plaintiff knew that a second officer was present at the accident scene and could provide potentially important, game-changing testimony. A diligent litigant should then readily know the importance of an on-scene officer's testimony after a vehicular accident and promptly attain such evidence.

Plaintiff, however, did not locate Captain McGary until after the trial; she fails to explain why she could not have exercised due diligence in identifying Captain McGary beforehand—until now, when she seeks a new trial. Plaintiff states that she made numerous attempts to learn about Captain McGary though Officer Hall and made phone calls to the police department. At the hearing, Plaintiff's counsel said that, after trial, Ms. Wright herself went to the police station in order to identify Captain McGary. But Plaintiff *still* does not justify why she—or her attorney—could not have done the same during the past two years before trial.

Instead, Plaintiff only exerted minimal effort in obtaining any officer's testimony in the first instance. Despite Plaintiff's representation at the hearing and pre-trial conference, there are, in fact, no subpoenas or requests for subpoena of Officer Hall filed in the record. *See generally*

ECF. When Plaintiff informed the Court during the pre-trial conference that Officer Hall had been nonresponsive, the Court had offered to dispatch U.S. Marshals to enforce any subpoenas or requests for subpoena if they were properly filed. Nonetheless, Plaintiff stood idle. Not only did Plaintiff ignore locating Captain McGary for over two years, but she also failed to exercise more effort to secure the testimony of Officer Hall. Therefore, no officers corroborated Plaintiff's testimony.

Due to Plaintiff's own disregard leading up to trial, the Court finds that she has not made a clear showing that she made "every reasonable and diligent effort" to attain Captain McGary's testimony. *See Burns*, 165 So. 3d at 155; *see also* LA. CODE CIV. P. 1972(2). The Court agrees with Plaintiff that Captain McGary's testimony might have been helpful to the jury and potentially valuable to her case-in-chief. But a new trial now—due to Plaintiff's initial inertia—would be absolutely unfair to Defendants.

Finally, Plaintiff's "new evidence" may be cumulative. In this trial, the jury actually found that Defendant Poole's truck collided with Plaintiff's vehicle and that Defendant had fault in the collision. Captain McGary's testimony, if elicited, would have simply confirmed this finding. The jury could still have determined, for example, that Plaintiff's vehicle was too close to the Defendant's truck, that she should have sounded her horn, or that she should have backed up when she saw the truck backing her way, and any of this amounted to negligence on her part. At this point, to hold otherwise is speculative. Thus, even with Captain McGary's purported testimony, the jury could have also reached the same result, which would make this evidence cumulative at best. *See Deimel v. Etheridge*, 198 So. 537, 540 (La. Ct. App. 1940) (holding new evidence that was merely cumulative did not merit new trial). Accordingly, the Court concludes that Captain McGary's testimony comes too late. Plaintiff cannot take a second bite of the apple.

### III. MOTION TO ALTER OR AMEND JUDGMENT

Defendant Allstate has filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), which allows a court to alter or amend a judgment to correct a "manifest error of law or fact. . . ." Allstate argues that because it was sued in its capacity as the uninsured/underinsured ("UM/UIM") motorist carrier of Plaintiff, and because the judgment award is below Defendant National Interstate's policy coverage of $1,000,000.00, Plaintiff's UM/UIM claims against Allstate should be dismissed.

The Court agrees. At trial, both National Interstate and Allstate's insurance policies were offered and introduced into evidence. National Interstate's liability limit is $1,000,000.00. The judgment in this case, in favor of Plaintiff, amounts to $126,000.00. Therefore, because the award is below National Interstate's coverage, Allstate's insurance policy is not imputed. Accordingly, the judgment against Defendant Allstate is dismissed.

### IV. CONCLUSION

Based on the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion for a new trial (Rec. Doc. 169) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Allstate's motion to alter or amend judgment (Rec. Doc. 171) is hereby **GRANTED**. The judgment (Rec. Doc. 167) is hereby **AMENDED** to dismiss Defendant Allstate from any claim of damages.

New Orleans, Louisiana, this 30th day of April, 2018.

_____
**ELDON E. FALLON**
United States District Judge